```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
IN RE:                         :   Case No.: 18-36862 (CGM)
                               :   Chapter 11
ALEXANDER BERNARD KASPAR,      :
                               :   355 Main Street
           Debtor.             :   Poughkeepsie, NY 12601
                               :
                               :   October 6, 2020
-------------------------------X   2:10 p.m.


     TRANSCRIPT OF Doc#[189] MOTION TO JOIN MOTION OF TOWN OF
     PUTNAM VALLEY FOR DISMISSAL OF CASE (RELATED DOCUMENT(S)
      [183] FILED BY LANCE PORTMAN ON BEHALF OF MCCABE & MACK
       LLP WITH HEARING TO BE HELD ON 10/6/2020 AT 09:00 AM
 AT POUGHKEEPSIE COURTHOUSE - 355 MAIN STREET; Doc# [183] MOTION
    TO DISMISS CASE FILED BY ANTHONY C. CARLINI JR. ON BEHALF
        OF TOWN OF PUTNAM VALLEY WITH HEARING TO BE HELD ON
   10/6/2020 AT 09:00 AM AT POUGHKEEPSIE COURTHOUSE - 355 MAIN
  STREET; Attachments: #1 Exhibit A #2 Exhibit B #3 Exhibit C #4
     Exhibit D #5 Exhibit E #6 Affidavit of Service) Doc# [191]
 OPPOSITION (RELATED DOCUMENT(S)183) FILED BY MATTHEW M. CABRERA
              ON BEHALF OF ALEXANDER BERNARD KASPAR;
  Doc#[190] RESPONSE TO MOTION TO DISMISS CHAPTER 11 CASE AND
 JOINDER BY PUTNAM COUNTY THEREIN (RELATED DOCUMENTS)[183] FILED
  BY MARK G. LEDWIN ON BEHALF OF PUTNAM COUNTY DEPT. OF FINANCE;
        DOC# [188] NOTICE OF ADJOURNMENT OF HEARING RE: CASE
 CONFERENCE; HEARING HELD AND ADJOURNED TO 10/6/2020 AT 9:00 AM,
  PURSUANT TO GENERAL ORDER 543 AND GUIDELINES FOR HOLDING COURT
  DURING COVID-19, THE HEARINGS WILL BE HELD TELEPHONICALLY; (DE
 CICCO, VINCENT). DOC# [195] REPLY TO MOTION TO DISMISS (RELATED
   DOCUMENT(S)183) FILED BY ANTHONY C. CARLINI JR. ON BEHALF OF
                       TOWN OF PUTNAM VALLEY
                       HEARD VIA TELECONFERENCE
             BEFORE THE HONORABLE CECILIA G. MORRIS
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:   (Continued)
```

*Proceedings digitally recorded.*
*Transcript produced by: Kathleen M. Price*

---

*American Legal Transcription*
*11 Market Street - Suite 215 - Poughkeepsie, NY 12601*
*Tel.: (845) 452-3090 - Fax: (845) 452-6099*
*amlegaltrans@aol.com*

```
APPEARANCES:


FOR THE DEBTORS:           MATTHEW M. CABRERA, ESQ.
                           M. Cabrera & Associates, P.C
                           2002 Route 17M, Suite 12
                           Goshen, NY 10924

For Town of Putnam
Valley:                    LEWIS D. WROBEL, ESQ.
                           Handel & Carlini
                           62 East Main Street
                           Wappingers Falls, New York 12590

Putnam County Dept.
Of Finance:                MARK G. LEDWIN, ESQ.
                           Wilson, Elser, Moskowitz, Edelman
                             & Dicker LLP
                           3 Gannett Drive
                           White Plains, NY 10604

For the United States
Trustee:                   ALICIA M. LEONHARD, ESQ.
                           Leo O'Brien Federal Building
                           11A Clinton Avenue, Room 620
                           Albany, New York 12207
```

```
 1  (Proceedings commence at 2:10:33 p.m.)
 2              THE COURT:  18-36862, Alexander Kaspar.
 3              MR. CABRERA:  Good morning.  Matthew Cabrera.
 4      I'm from Cabrera & Associates for the debtor along with
 5      Alexander Kaspar.
 6              MR. WROBEL:  Good morning, Your Honor.  Louis D.
 7      Wrobel, of counsel with the firm of Handel & Carlini,
 8      special counsel to the Town of Putnam Valley.
 9              MS. LEONHARD:  Good morning, Your Honor.  Alicia
10      Leonhard for the United States Trustee.
11              MR. LEDWIN:  Your Honor, Mark Ledwin of Wilson
12      Elser appearing on behalf of Putnam County.
13              THE COURT:  Very good.  This -- what is in front
14      of me?  This is a motion to dismiss?
15              MR. LEDWIN:  That is correct, Your Honor.
16              THE COURT:  And it's based on the application
17      for attorney's fees?
18              MR. LEDWIN:  No.  Well, it's based on several
19      items under 1112(b)(4)(i), (f), and (a).  One is that the
20      -- this case was filed on the eve of foreclosure of the
21      Gilbert Lane property since that date nearly two years ago
22      and no post-petition mortgage payments have been made.  It
23      approximately $150,000 in arrears post-petition.
24              The petition real property taxes for the
25      undeveloped land are now approximately $243,000 in
```

1  arrears.  There are --
2          THE COURT:  Well, part of that was when you --
3  excuse me for interrupting but part of that was when the
4  county had a receiver in, correct?
5          MR. LEDWIN:  The town had a received in for
6  approximately nine --
7          THE COURT:  Yeah.  Well, let's move along.
8  Yeah, okay.
9          MR. LEDWIN:  Moving right along.  There's also
10 as mentioned before unauthorized payments to counsel for
11 the debtor.  Counsel for the debtor was paid before the
12 Court order was entered.  Operating statements not filed
13 in a timely manner usually filed; in calendar 2020,
14 they've been filed usually on the eve of the case
15 conference and right now, the August is still outstanding.
16 There is also -- there is just a review of the operating
17 statements has shown that the debtor with the exception of
18 when he got the funds from the receiver has never had more
19 than $7,000 from the bank account.
20         So there are still -- there is just no money
21 here to be able t put forth a plan that may be confirmed,
22 and we are --
23         THE COURT:  Very good.
24         MR. LEDWIN:  -- and we ask that -- the Town asks
25 that the case be dismissed.

1    THE COURT: Ms. Leonhard?

2    MS. LEONHARD: The U.S. Trustee's support of
3    dismissal of the case, it just -- it's just -- I guess
4    it's not going anywhere, and I will say that even though,
5    you know, part of the tax issue was that during the period
6    that the receiver was in after the debtor took
7    repossession, you know, he's not paid then, and also -- I
8    just -- the debtor simply does not appear to have the
9    resources to confirm a plan, and so on that basis, the
10   U.S. Trustee --

11   THE COURT: Okay.

12   MS. LEONHARD: -- would request that the Court
13   dismiss.

14   THE COURT: Very good. Mr. Portman?

15   MR. PORTMAN: Yes, Judge. Lance Portman, McCabe
16   & Mack. We filed a joinder into the -- for the motion to
17   dismiss. For all the reasons, this is, you know, the
18   classic thing of a case sitting there going nowhere and
19   it's had enough time in Bankruptcy Court to see if it's
20   going anywhere and it's going nowhere.

21   THE COURT: Mr. Cabrera?

22   MR. CABRERA: Your Honor, I just -- I'm behind
23   myself. This dates back to 2012. The bankruptcy filed in
24   2018. As you had said from the beginning, there was a
25   receiver in place on the property. There was supposed to

1  be a sale to the land trust took up nearly a little more
2  than a year of this case. You removed the receiver. The
3  land trust disappeared with regards to the sale. They
4  were only going to get a million dollars if that for the
5  property at that particular time.
6      Since you allowed Mr. Kaspar to take control of
7  the bankruptcy again, in less than nine months of which
8  three to five we've had issues with COVID, he's retained a
9  real estate broker, marketed nearly 400 acres of property
10 for $1.95 million. I detail the report from the real
11 estate broker with regards to the tremendous activity that
12 we've had in interest with the underlying properties. We
13 are on the verge of receiving multiple officers, possibly
14 even getting into a bidding war for this particular
15 property.
16     Both the town, the Trustee, the Court, it has
17 been since the beginning of this case, that the plan would
18 be funded not from the debtor's monthly income but from
19 the sale of the properties.
20     So the town is in control through their receiver
21 of this property for over ten years, did nothing. Didn't
22 remediate the property, didn't sell the property. 2018,
23 they get the authorization to sell the property to a land
24 trust for nearly half of it was worth. The bankruptcy is
25 filed for another year. They still do nothing. No

remediation on the property, no conclusion of a sale.

In less than nine months since you put the debtor in charge, he has done more in that nine months than the town and receiver has done in over ten years. To sit here and say that this is case is going nowhere is an utter ridiculous comment. The --

THE COURT: You also -- let me make -- let me just make a comment and then I'll rule unless somebody wants to chime in. They also rented a substantial piece of property and the receiver did it for a thousand dollars a month.

MR. CABRERA: Exactly, Your Honor.

THE COURT: For twenty-five acres. So I have -- Mr. Rubel, what do you wish to say?

MR. WROBEL:: Your Honor, the reason why this is all here is that Mr. Kaspar operated an illegal landfill on the site, contaminated the property. It's fine. We're hearing about all these oh, interest and offers. There are no offers, and as I -- and as I put in the affidavit of the building inspector, when people have -- when brokers have called in and inquired and building inspectors said you are welcome to come in and make an appointment and review the file --

THE COURT: Mr. Rubel, that's only on five acres of this -- that's only on five acres of this entire piece

1   of property.

2            MR. WROBEL:: And no one has made an offer, Your

3   Honor. And also --

4            THE COURT: Mr. Cabrera, Mr. Cabrera, how about

5   a motion for contempt against that city for not disclosing

6   exactly what needs to be disclosed. Yes, Mr. Rubel --

7            MR. CABRERA: I am in the process of filing that

8   as you speak, Your Honor.

9            (Participants speaking simultaneously)

10           THE COURT: Mr. Cabrera, Mr. Cabrera, Mr.

11  Cabrera, Mr. Wrobel is speaking.

12           MR. WROBEL:: No, Your Honor, there is no basis

13  for that. There is no basis for that, Your Honor.

14           THE COURT: You just admitted that, Mr. Wrobel.

15  Mr. Rubel --

16           MR. WROBEL:: No --

17           THE COURT: Mr. Wrobel, you just admitted it.

18           MR. WROBEL:: No, I did not. I did not. Your

19  Honor, I did not admit anything. What I told you was in

20  Mr. Qualiatis (ph) affidavit, it says if someone is

21  interested, come in and get -- and get the information.

22  If you recall, Your Honor, counsel accused the town a

23  couple -- a few months ago if dissuading people. The town

24  is not dissuading anybody. They would like to have

25  someone come in and purchase the property and clean it up

1  and as of this date, we have not had anyone come in.  It's
2  fine to say that there -- they've got so much interest.
3  There are no offers yet.
4  　　　　　MR. CABRERA:  Your Honor, I draw reference as
5  you said to file the motion.  The motions will be filed if
6  not today by tomorrow.  The town will get its opportunity
7  to defend what exactly it's been doing.  We have a
8  statement.  We only included the email from the broker,
9  the actual listing broker to the debtor and the co-debtor
10  of his actual conversation with the town to which you can
11  read, it's attached to Ms. Dilibrio's (ph) affirmation of
12  what the town actually said.
13  　　　　　So Mr. Wrobel can sit here and basically
14  disingenuously claim that the town is not involved in a
15  campaign to interfere with the sale of his property and
16  then file a response that says they want the property is
17  sold.  The town has gone out of its way to interfere, to
18  interrupt, to basically scare away people that are looking
19  to buy this property, and that will be shown in the
20  motions that are going to be filed.
21  　　　　　The town will get its opportunity to defend when
22  the motions are filed.
23  　　　　　MR. WROBEL::  If there are --
24  　　　　　THE COURT:  Mr. Wrobel?
25  　　　　　MR. WROBEL::  If there's so much interest where

1    are the specifics?  Where is mention of the people who
2    called in?  There is none -- there's none in the debtor's
3    papers and also they -- as the U.S. Trustees indicated and
4    in support of this motion, the debtor simply does not have
5    money.  Doesn't also -- even if there's going to be a
6    claim of about #350,000 which I think is low, there's no
7    money there to pay it.
8            MR. CABRERA:  Well, that's your opinion and
9    you're not -- you have no experience whatsoever for
10   remediation.
11           THE COURT:  Mr. Cabrera.  Mr. Cabrera.  Mr.
12   Cabrera!
13           MR. CABRERA:  Yes, Your Honor.  I apologize.
14           THE COURT:  Dismissal of a Chapter 11 is
15   governed by 11 U.S.C. 1112(b) which states on request of a
16   party in interest and if you're noticing a hearing, the
17   Court shall convert or dismiss a case under this chapter
18   whichever  is in the best interests of the creditors and
19   the estate for cause unless the Court determines that the
20   appointment under 1104(a) of a trustee or examiners is in
21   the best interest of the creditors or estate.
22           Substantial or continuing loss to or diminution
23   of the estate in the absence of likelihood of
24   rehabilitation, gross mismanagement of the estate, failure
25   to obtain appropriate insurance that poses a risk to the

1  estate or to the public, unauthorized use of cash
2  collateral, substantially harmful to one or more
3  creditors, failure to comply with an order of the Court,
4  unexcused failure to satisfy timely any filing or
5  reporting requirement established by this title about any
6  rule applicable to a case under this chapter, failure to
7  attend the meeting of creditors, failure to provide a
8  timely information or attend meetings reasonably
9  requested, fairly to timely pay taxes owed after the date
10 per order of relief to a filed tax return due after the
11 date of the order removed.
12       Failure to file a disclosure statement, failure
13 to pay any fees or charges required under Title 28.
14 Revocation of an order of confirmation under 1134.
15 Inability to effective substantial  confirmation of a
16 confirmed plan, material default by the debtor with
17 respect to the confirmed plan, termination of a confirmed
18 plan by reason of the occurrence of a condition specified
19 in the plan, and failure of the debtor to pay any domestic
20 support obligation which is immaterial here.
21       Failure to make post-petition mortgage payment
22 is not a cause to dismiss.  Neither is paying attorney's
23 fees.  Debtor admits being delinquent on post-petition
24 taxes which is caused to dismiss.  Those delinquencies
25 falls squarely on the receiver as he was in control of the

18-36862-cgm   Doc 218   Filed 11/04/20   Entered 11/05/20 09:45:30   Main Document
Pg 12 of 17
*In Re: Alexander Bernard Kaspar - 10/6/2020*                    12

estate from February the 22nd to 2019 to September the 16th to 2019.

Then the Court was asked to reconsider that motion which was heard on January the 14th, 2020 and denied via an order January the 21st, 2020. The debtor has had only control of this property since December the 16th which is only 2.5 months prior to the COVID outbreak in New York. Considering that Christmas and New Year's holidays occurred and COVID-19 caused widespread disruption, this debtor has made significant process.

In February 2020, debtor filed operating reports for October, November, December. Debtor set the date for filing proofs of claim. Debtor objected to the claim of a receiver. On April the 20th, debtor filed amended schedules. On June 2020, debtor filed operating reports for January through May. On June 15th, the debtor filed a status report advising the Court that he engaged a licensed engineer to review NYSDEC remediation guidelines set in the September 2017 letter from NYSDEC.

The engineer has reached out to the NYSDEC and prepared to start Step 1 and 2 of the remedation guidelines. The land review was set forth in one step of the remediation guidelines should be completed within the next 45 days followed by written reports to satisfy Step 2.

On June 17th, 2020, the debtor filed an application to employ Kanam Realty, and that application was approved via order July 27th, 2020.  On September the 14th, debtor filed operating reports for June and July 2020.  He also filed a status report indicating that the land is being marketed for sale.

He stated overall there have been at least twenty-five direct inquires and at least ten in person showing.  On September the 11th, 2020, counsel for the debtor had a conference with the counsel for one of the prospective buyers to discuss the property and determine whether or not the buyer could or should move forward with making the decision of whether or not to make an offer. a side visit took place on August the 18th, 2002 from ECMS and NYSDEC, the initial evaluation on the visit was that the property was very overgrown and an initial site visit would need to be planned for early in the fall.  This would allow for better visual review of the area in question.

From August the 18th visit, the NYSDEC representative did mention that the agri [sic] use of the debtor performing the roads would need to be removed and carted away.

Once site investigations are completed for remedial action work plan will be drawn up in accordance

with NYSDEC proposed remediation schedule, an initial evaluation of the comments from the NYSDEC and review of the site and prior remediation project. ECMS projects at this time barring any serious intervening factors the total cost of remediation may be completed for less than $350,000.

The status letter continued. The debtor has been approached by several people who are willing to pay six times the amount that current lessee is paying. So the debtor believes that they can eject Ms. Haywood from the property, he can make at least 10,000 per month and use that to pay taxes.

I can say as the Court this debtor has a lot of irons in the fires, including remediation of the land, sale of the property, attempts to evict the tenant and relet or use land to increase income.

Application for tax returns, possible loan from equity in his NYC co-op. Dismissal would cause the land to fall back into the hands of the receiver who had it for ten years and had it before this Court and did nothing during the time he was in front of this Court.

He was incapable of dealing with any of this issue during his tenure. Remediation and sale is in the best interests of all creditors. On March the 22nd, 2020, this Court entered an order approving an award of interim

fees to debtor's counsel in the amount of $54,060 and expenses in the amount of $2,973.32. Debtor's counsel admitted receiving 12,000 prior to the fee application being granted. Under the Code, attorney may seek compensation for his services before the completion of the case.

Section 331 provides (a) debtor's attorney or any professional person employed under 327 or 1103 of this title may apply to the Court not more than once every 120 days after an order for relief in a case under the title are more often if the case -- court permits for such compensation for services rendered before the date of such obligation or reimbursement of expenses incurred before such date as provided under Section 330 of the Code.

After notice in a hearing, the Court may allow and distribute to each applicant such compensation or reimbursement.

While debtor's counsel is permitted to receive compensation during the pendency of the case, he may only do so after the request has been approved. Debtor's counsel has admitted to receiving 6,000 on an additional 6,000.

The application to freeze was filed February the 11th and granted on March the 23rd. It is alleged that the debtor made payments to M. Cabrera in the amount of

1  6,000 each on January 21st, February 19th, March 25th.
2  The operating reports indicate this.  The operating
3  reports do not indicate whether additional attorney's fees
4  have been paid.
5  　　　　The 363(b) states that debtor's counsel received
6  a retainer of 12,000 and was paid by Grace Delbrito (ph).
7  　　　　Mr. Cabrera, have you received any additional
8  fees other than the twelve-thousand-dollar retainer and
9  the 18,000 listed above?
10 　　　　MR. CABRERA:  No, I have not, Your Honor.
11 　　　　THE COURT:  The debtor's counsel states that he
12 has not received any additional fees.  The Court permits
13 him to retain them but to hold that 18,000 until the final
14 fee at confirmation.  If the debtor has collected
15 additional fees that have not been disclosed on the
16 operating report, counsel will disgorge them immediately
17 as the fees are not reported, and a hold back of that
18 amount is to -- well, we don't have to deal with it.
19 　　　　Very good.  Mr. Wrobel?  You wish to be heard.
20 　　　　MR. WROBEL::  Your Honor, I would just say, I
21 would just note that the receiver did produce a buyer for
22 $1 million.  That's all.
23 　　　　THE COURT:  I understand that.  I am not
24 dismissing this case.  Submit an order, Mr. Cabrera,
25 denying the motion for dismissal.

```
 1              MR. CABRERA:  Thank you, Your Honor.
 2              MR. WROBEL:  Thank you, Your Honor.
 3         (Proceedings concluded at 2:29:48 p.m.)
 4                           -oOo-
 5
 6
 7    I, Kathleen M. Price, certify that the foregoing
 8  transcript of proceedings is a true and accurate record of the
 9  proceedings.
10
         Kathleen M. Price
11       AMERICAN LEGAL TRANSCRIPTION
12       11 Market Street, Suite 215
13       Poughkeepsie, New York 12601
14       Date: October 27, 2020
15
16
17
18
19
20
21
22
23
24
25
```