| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>POUGHKEEPSIE DIVISION | HEARING DATE: February 1, 2022<br>HEARING TIME: 9:00 a.m.<br>OBJECTION DEADLINE: January 25, 2022 |

------------------------------------------------------x
In re:                                                 :
                                                       :  Case No. 18-36862 (CGM)
ALEXANDER BERNARD KASPAR,                              :
                                                       :  (Chapter 11)
                        Debtor.                        :
------------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES TRUSTEE'S
MOTION TO DISMISS OR CONVERT CASE UNDER 11 U.S.C. § 1112(b)**

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), hereby files a Reply Memorandum in Support of the United States Trustee's Motion to Dismiss or Convert Case under 11 U.S.C. § 1112(b) (the "Motion"). In further support of the Motion and in response to the Affirmation of Counsel in Opposition to the United States Trustee's Motion to Dismiss or Convert Case under 11 U.S.C. § 1112(b) (the "Opposition"), the United States Trustee respectfully represents and alleges as follows:

**I.    INTRODUCTION**

The Court should overrule the Opposition and dismiss the Debtor's case. Contrary to the Debtor's arguments, the Debtor has failed to file timely Monthly Operating Reports since the outset of the case and Counsel's staffing shortage does not explain or excuse the failure. The Debtor has not made full disclosure of payments of real property tax arrears by the co-owner of the Debtor's real properties. He initially failed to disclose the payments in the Monthly Operating Reports and only did so after the United States Trustee raised the issue; and not all of the disclosures were accurate. The Debtor also failed to fully disclose the progress of the remediation of one of his properties, including the date the State of New York approved the Debtor's remediation plan and a timetable for completion of the work. The omission of this information is especially concerning given the Debtor's representation that the remediation had

1

to be approved before he could propose a chapter 11 plan.  The Debtor also failed to disclose that he filed a Petition challenging the Town of Putnam's real property tax assessments of his properties and he did not seek Court approval of the retention of special counsel who filed the Petition.  Contrary to the Debtor's assertion that he is now in a position to file a disclosure statement and plan, he has not provided a timeline for completing the plan confirmation process, and he cannot effectuate a plan.  Finally, the Debtor The Debtor cannot demonstrate either element of §1112(b)(2) if the Court determines that there is cause to dismiss or convert the case under 11 U.S.C. §1112(b)(4).

## II.    FACTS[1]

### A.    Closing of the Sale of Real Property (Tax Map Nos. 72.19-1- 29 & 83-1-1)

On December 8, 2021, the Court entered an Order (the "Sale Order") Granting the Debtor's Motion to Sell Property Free and Clear of Liens under 11 U.S.C. § 363(f) (the "Sale Motion").  ECF Doc. Nos. 282 and 292.  Pursuant to the Sale Order, the Court approved the private sale of real property located at Sprout Brook Road, Putnam Valley, NY 10579, identified as Tax Map Nos. 72.19-1- 29 & 83-1-1 (the "Sprout Brook Property"), to Hudson Highlands Land Trust, Inc. ("HHLT"), for $798,000.00.  Sale Order, at 1; and Sale Motion, ¶ 38.  Under the Sale Order, "within ten days after the closing of the proposed sale, counsel for the Debtor shall file a closing statement with the Court and serve a copy on the Office of the United States Trustee[.]"  Sale Order, at 5.  On January 29, 2022, the Debtor filed a Notice of Consummation of Sale and Closing Statement (the "Closing Statement"), showing, among other things, that the sale closed on December 28, 2021.  Closing Statement, at 1, Exhibit 1 to the Declaration of Alicia M. Leonhard (the "Leonhard Declaration).

---

[1] In this section, the United States Trustee discusses facts relevant to the Motion and the Opposition, some of which became known after the United States Trustee filed the Motion on December 18, 2021.  ECF Doc. No. 294.  The recitation of facts contained in the Memorandum of Law in Support of the Motion are hereby incorporated by reference as if fully set forth in this Reply.  ECF Doc. No. 294-1.

### B. The Petition for Review of Tax Assessments

On July 16, 2021, the Debtor and Grace De Libero ("Ms. De Libero"), the co-owner of the real property listed on the Debtor's Schedule A/B, filed a Petition for Review of Tax Assessments (the "Tax Petition"), against the Town of Putnam Valley (the "Town"), challenging the real property taxes assessed against the properties located at 75 Cimarron Road. Tax Petition, Exhibit 2 to the Leonhard Declaration. Attorney Joseph Albert, Esq. filed the Tax Petition on the Debtor's and Ms. De Libero's behalf. *Id.* The Debtor did not seek Court authority to retain Mr. Albert as special counsel or disclose the Tax Petition to the Court or the United States Trustee.

### C. Monthly Operating Reports and Amended Operating Reports

On January 28, 2022, the Debtor filed Amended Operating Reports for July and August 2021. ECF Doc. Nos. 311-312, Exhibits 3 and 4 to the Leonhard Declaration. On November 1, 2021, the Debtor filed the September 2021 Operating Report. ECF Doc. No. 278, Exhibit 5 to the Leonhard Declaration. The Debtor filed his October 2021 Operating Report on December 3, 2021. ECF Doc. No. 287. On December 20, 2021, the Debtor filed his November 2021 Operating Report. ECF Doc. No. 296, Exhibit 6 to the Leonhard Declaration. On January 10, 2022, the Debtor filed the December 2021 Operating Report, and on January 29, 2022, he filed an Amended December 2021 Operating Report. ECF Doc. No. 317, Exhibit 7 to the Leonhard Declaration.

**III.    ARGUMENT**

    **A.    The Debtor Has Failed to Fulfill his Fiduciary Duty of Disclosure.**

        **1.    The Debtor Has Failed to File Timely and Accurate Monthly Operating Reports.**

In response to the United States Trustee's contention that the Debtor has failed to file timely and accurate operating reports in violation of his fiduciary duty of disclosure, he argues that (1) counsel is to blame for the late filing of Operating Reports due to understaffing of his office in 2020 and 2021 and (2) the Debtor has made multiple disclosures of Ms. De Libero's payments of delinquent real property taxes.  Opposition, at 4-6,  ¶¶ 28-39 and ¶¶ 40-55.

Counsel's staffing shortage in 2020 and 2021 does not explain the failure to file timely Monthly Operating Reports, which began in 2019.  For example, the Debtor filed Operating Reports for December 2018 and January 2019 on March 12, 2019.  ECF Doc. Nos. 65-66.  He filed the November 2018, February 2019, and March 2019 Operating Reports on April 23, 2019.  ECF Doc. Nos. 80-82.  He filed the April 2019 and May 2019 Operating Reports on June 17, 2019 and August 12, 2019, respectively.  ECF Doc. No. 105 and 109.  The late filing of Monthly Operating Reports has been a pattern since the outset of the case, and this failure has impaired the ability of creditors, the Court, and the United States Trustee to monitor and assess the Debtor's financial condition.

The Debtor also claims he made full disclosure of Ms. De Libero's real property tax payments in Debtor Status Reports filed with the Court, including the Amended Debtor Status Report, filed on December 6, 2021 (the "Amended December Status Report"), in which he listed the payments by parcel number and dates.  Opposition, at 6,  ¶¶ 40-44; and Amended Status Report, Exhibit A to the Affidavit of Alexander Bernard Kaspar, filed with the Opposition (the "Debtor's Affidavit").  ECF Doc. No. 306-1.  The disclosures in the Debtor Status Reports are

4

problematic because the Debtor made them after Ms. De Libero made the payments. At the very least, the Debtor should have provided this information to the Court, creditors, and the United States Trustee before she made the payments, and he should have included them in his Monthly Operating Reports because the payments satisfied bankruptcy estate liabilities.

In an apparent effort to cure the failure to disclose after the United States Trustee raised the issue, the Debtor tried to include the payments in his Monthly Operating Reports, but not all of the disclosures were accurate. The Debtor filed Amended Operating Reports for July and August 2021 on November 28, 2021, each of which included a revised Statement of Cash Receipts and Disbursements, showing "[d]isbursements made by third party for the benefit of the estate" of $63,520.00 and $5,491.00, respectively. Amended July Operating Report, Part 1, Cash Receipts and Disbursements; and Amended August 2021 Operating Report, Part 1, Cash Receipts and Disbursements. The third-party disbursements disclosed in the Amended July 2021 and August 2021 Operating Reports are consistent with the figures set forth in the Amended December Status Report.

On the other hand, the third-party disbursements disclosed in the September 2021 Operating Report contradict the Amended December Status Report. The Debtor did not disclose any third-party payments in his September 2021 Operating, whereas in the Amended Status Report, he represented that Ms. Di Libero paid real property taxes totaling $27,204.11. September 2021 Operating Report, Part 1, Cash Receipts and Disbursements; and Amended December Status Report, at 1. In the November 2021 Operating Report, the Debtor disclosed third party disbursements of $96,215.00. November 2021 Operating Report, Part 1, Cash Receipts and Disbursements. Based on a review of the Amended December Status Report, it appears that this figure represents the total taxes Ms. De Libero paid between July and

5

September 2021.  Only on the last page of the November 2021 Operating Report, does the Debtor reveal that this amount represents "[p]rior payments to Putnam County [of] $96214.96 (July 2021 - $63,519.88, Aug 2021 - $5454.97, Sept 2021 - $27204.11)."  November 2021 Operating Report,  Schedule of Cash Receipts and Disbursements Broken Down by Category.

The inaccurate and misleading disclosure of Ms. De Libero's tax payments is not the only issue with the Debtor's Monthly Operating Reports.  There is also a discrepancy between the Amended December Operating Report and the Closing Statement with respect to the amount paid to the Debtor from the proceeds of the sale of the Sprout Brook Property.  The Amended December 2021 Operating Report shows that the Debtor received sale proceeds of $155,728.00.  *Id.*, Part I, Cash Receipts and Disbursements and Schedule of Cash Receipts and Disbursements Broken Down by Category on the last page of the Amended December 2021 Operating Report.  The Closing Statement, on the other hand, shows that the total due to the seller at closing was $707,700.26, with $234,299 50 to Putnam County for taxes, $400,000.00 to Debtor's counsel, and $73,400.68 to Frank E. DeEsso, as attorney.  Closing Statement at 1-2.

"Timely and accurate financial disclosure is the lifeblood of the chapter 11 process. . . . And [the filing of timely and accurate Operating Reports] is very high on the list of fiduciary obligations imposed on a debtor in possession."  *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991).  "Neither the court nor creditors should have to coerce or implore a debtor into fulfilling [the obligation to make timely and accurate financial disclosures."  *In re Ronald Kerns & Sons*,  2002 WL 1628908, at *2 (W.D.N.Y. June 11, 2002) (quoting *Berryhill*, 127 B.R. at 433).  "Filing a piece of paper is meaningless if the content is inaccurate, misleading, or wrong . . . ."  *In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009).  The filing of inaccurate or incomplete Monthly Operating Reports defeats "the purpose the operating reports . . . to provide

6

parties in interest, the UST, and the Court with meaningful financial information from which to gauge the debtor's performance." *In re Visicon Shareholders Trust*, 478 B.R. 292, 315 (Bankr. S.D. Ohio 2012).

Here, the Debtor has exhibited a pattern of filing untimely Operating Reports from the very beginning of the case, which cannot be fully explained or excused by Counsel's acceptance of blame. The Debtor amended the Operating Reports to disclose Ms. De Libero's payments of tax arrears only after the United States Trustee raised the issue, and even the amendments were not entirely accurate. By combining three months of payments in the November 2021 Operating Report, it would appear that the Debtor overstated Ms. De Libero's payments by $96,214.96, but for the fine print on a separate page explaining the number. Both the Amended December 2021 Operating Report and the Closing Statement were filed at the last-minute, and there is no explanation for the discrepancy with respect to the disposition of the proceeds of the sale of the Sprout Brook Property. Misstating disbursements in this way shows a lack of regard for the importance of preparing true and correct Operating Reports.

    **2. The Debtor Has Not Made Full Disclosure of the Progress of the Remediation of the Cimarron Road Property.**

The Debtor also claims that he has made full disclosure of the progress of the remediation of the Cimarron Road Property in his Debtor Status Reports since the time that the Court approved the employment of Environmental Consulting and Management Services ("ECMS"). Opposition, at 8, ¶¶56-70. To the contrary, the disclosures have been cursory and untimely. For example, the Debtor did not disclose that ECMS submitted a Preliminary Site Investigation Work Plan (the "Investigation Plan") to the State on November 20, 2020 or that the State approved the Investigation Plan on December 21, 2020, subject to revision if necessary. Exhibit C to the Debtor's Affidavit. In June 2021, the Debtor reported that ECMS "recently [presumably

7

in June] sent the preliminary remediation plan to the State for Review" and expected a response within thirty days. Debtor Status Report, dated June 21, 2021, at 1, Exhibit B to the Debtor's Affidavit. In the Debtor Status Report, dated August 20, 2021, the Debtor had no updates on ECMS's progress. *Id*. at 2. It was not until October 1, 2021, that the Debtor reported that in June 2021, ECMS sent the full 100-page remediation package to the State (the "Remediation Plan"). Debtor Status Report, dated October 1, 2021, at 1. The Debtor had no updates thereafter until January 25, 2022, when he revealed that the State approved the remediation plan on an unspecified date. Opposition, at 9, ¶ 66. Nowhere in the voluminous documentation of the remediation process, which included the Investigation Plan, related correspondence with the State, and the Remediation Plan, filed with the Opposition, did the Debtor provide any correspondence with the State or other information regarding the approval of the Remediation Plan or a timeline for completion of the remediation. Exhibit C to the Debtor's Affidavit. ECMS submitted the Remediation Plan to the State seven months ago and the Debtor still has not disclosed the State's approval date or provided a timeline for completion of the work.   . Opposition, at 14, ¶ 99.

      **3.**      **The Debtor Failed to Disclose the Tax Petition or Seek Approval of the Employment of Counsel.**

The Debtor also failed to disclose the Tax Petition, which he and Ms. De Libero filed in July 2021. What is worse, the Debtor has never sought Court approval of the attorney who filed the Tax Petition. Even though Ms. De Libero is a Petitioner, along with the Debtor, the Tax Petition involves an obligation and property of the Debtor's bankruptcy estate, and there is no justification for failing to make full disclosure of the action or seek to retain special counsel in compliance with the Bankruptcy Code.

8

**B.     The Debtor Cannot Effectuate a Plan.**

The Debtor argues that he could not propose a plan until the State approved the Remediation Plan and he had cash from the sale of real property to fund the remediation and that with the closure of the sale of the Sprout Brook Property and the State's approval of the Remediation Plan, he "is in a position to draft and file a disclosure statement and plan." Opposition, at 14, ¶ 99. Nothing has prevented the Debtor from filing a disclosure statement and plan and selling the properties through the plan but his sole focus in that regard has been selling the properties outside of a plan, which is somewhat inconsistent with the purpose of chapter 11. The Court approved the sale of the Sprout Brook Property on December 8, 2021 and the State approved the Remediation Plan sometime between June 2021 and the present, but the Debtor has not revealed a timetable for initiating the disclosure statement and plan process. All of these facts indicate that the Debtor cannot effectuate a plan.

**C.     The Debtor Cannot Meet his Burden of Proof under 11 U.S.C. § 1112(b)(2).**

The Debtor cannot demonstrate either element of §1112(b)(2). One of the reasons the United States Trustee seeks dismissal or conversion of the case is the Debtor's failure to file timely and Operating Reports and fully disclose other relevant financial information consistent with his duty of disclosure. Because the Debtor's failure implicates fiduciary duties, the Debtor cannot establish any reasonable justification for his failure and no cure excuses his failure to fulfill a basic duty imposed on all chapter 11 debtors. The Debtor has yet to file a disclosure statement and plan; and even though he states that he is now in a position to go forward with the plan confirmation process, he has not provided a timeline for accomplishing that purpose. It would, therefore, be difficult, if not impossible, for the Debtor to show that "there is a reasonable

9

likelihood that a plan will be confirmed . . . within a reasonable period of time. 11 U.S.C. § 1112(b)(2)(A).

**IV.    CONCLUSION**

Based on the foregoing, the United States Trustee requests that the Court overrule the Debtor's Opposition to the Motion and dismiss the case for cause under § 1112(b).

Dated:  Poughkeepsie, New York  
        January 30, 2022

WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE, REGION 2

By: */s/ Alicia M. Leonhard*  
    Alicia M. Leonhard  
    Trial Attorney  
    Leo O'Brien Federal Building  
    11A Clinton Avenue, Room 620  
    Albany, New York 12207  
    Direct Telephone: 202.495.9929  
    Albany Office Telephone: 518.434.4553  
    Email: Alicia.M.Leonhard@usdoj.gov